ALBRENT FREIGHT & STORAGE COMPANY and others, Appellants, vs. PUBLIC SERVICE COMMISSION, Respondent: STEFFKE FREIGHT COMPANY, Intervening Respondent.*

*January 6—February 3, 1953.*

* Motion for rehearing denied, without costs, on May 5, 1953.

120

For the appellants there was a brief and oral argument by *R. W. Peterson* of Madison.

For the appellant Northern Transportation Company there was a separate brief by *Welsh, Trowbridge, Wilmer & Bills* of Green Bay, and oral argument by *Fred N. Trowbridge.*

For the respondent Public Service Commission there was a brief by the *Attorney General* and *William E. Torkelson,* chief counsel for the commission, and oral argument by *Mr. Torkelson.*

For the intervening respondent Steffke Freight Company there was a brief and oral argument by *Claude J. Jasper* of Madison.

FAIRCHILD, J.   The issue presented on this appeal is whether finding No. 16 set forth in the foregoing statement of facts, that "the grant of additional authority sought, *i. e.,* unification of operations by Steffke under its and Yellow's authority is 'in the public interest and required by public convenience and necessity' " is sustained by substantial evidence in view of the entire record.

The Public Service Commission is the body provided by statute to hear and determine questions arising upon an application for transfer by assignment of rights and privileges of one common carrier to another common carrier. The propriety of such assignment or transfer rests only on the fact that it is not against the public interest. Sec. 194.25 (2), Stats. The Public Service Commission is also the authority which, upon an application for an amendment to a certificate involving establishment of an additional service, determines

whether such amendment may be allowed. This commission has the power, limited of course as the public interest may require, upon a finding of public convenience and necessity, to grant such amendment. Sec. 194.23 (1). It is in the allowance of the amendment to the certificate permitting the unifying of the two lines that gives rise to the claim that the commission exceeded its powers.

The prior operation of the two companies acting under their separate certificates resulted in joint-line traffic in which there was an interchange of freight between Yellow and Steffke at Fond du Lac and Milwaukee. That service would continue under the approval of the assignment of Yellow's operating rights to Steffke.

Under sec. 194.25 (2), Stats., as we have said, the commission could approve the assignment, as the result is not against the public interest. However, the additional authority provided for by the order of the commission cannot be allowed merely on the basis of its not being against public interest. Under sec. 194.23 (1) there must exist substantial evidence of public convenience and necessity in order that the commission may issue the amendment. That section reads in part:

"The commission shall have power, as the public interest may require, *upon a finding of public convenience and necessity,* to issue or refuse any such certificate or amendment or to issue it for the partial exercise only of the privilege sought. . . . Before granting a certificate or amendment the commission shall take into consideration existing transportation facilities in the territory proposed to be served, including common and contract motor carriers and steam and electric railways." (Emphasis supplied.)

In *Clintonville Transfer Line v. Public Service Comm.* 258 Wis. 570, 46 N. W. (2d) 741, we held in effect (headnote) :

"The public service commission must approve an assignment of a certificate of a common motor carrier if the same

is not against the public interest, which is the requirement prescribed by sec. 194.25 (2), Stats., and the commission cannot impose an additional requirement by a rule providing that, if a certificate of an intrastate common motor carrier is to be assigned to another like carrier operating a connecting route and it is proposed to operate the combined systems as a single through route, the application must be supported by evidence that public convenience and necessity require the through service; but if it is proposed to link up the two routes and operate a single-line service, thereby creating new operating rights, it is necessary for such assignee to file an application for an amendment to its certificate, pursuant to sec. 194.23, and then to establish public convenience and necessity, as required by that section."

On this appeal the commission and Steffke seek to uphold the commission's finding that the amendment of Steffke's certificate to permit unified operations is "in the public interest and required by public convenience and necessity" upon the following two grounds:

(1) That Steffke would not accept the assignment of Yellow's authority unless unification of operations was also approved, the result being that a large part of the territory previously serviced by Yellow would be without single-line common-motor-carrier service badly needed in such territory.

(2) That if unification of operations is granted, Steffke will be able to effect economies in operation which are estimated to amount to approximately $200,000 per year.

The first of these two grounds urged presents a rather unique issue, i. e., whether a case of public convenience and necessity is made out under ch. 194, Stats., for granting new competitive operating rights to common motor carrier A in territories X and Y against common motor carriers B, C, D, and E already operating under certificates in one or both territories, in order to provide single-line common-motor-carrier service by operator A in territory X, without any showing that the existing common-motor-carrier service in

territories X and Y does not fully meet all public needs for such service. There was no testimony by shippers or consignees as to any need for further or improved motor-carrier service. If the commission's order granting unification is permitted to stand, Steffke will gain a competitive advantage over the plaintiffs by reason of being able to offer single-line service from any point in his original territory to any point in Yellow's territory and *vice versa*.

Appellants contend that there is no substantial evidence, in view of the entire record, to support the commission's finding that if Steffke is denied its application to unify operations under its and Yellow's authorities, Steffke then will not accept a mere approval of the assignment of Yellow's authority. We will now consider the evidence bearing upon this point.

It is true that upon the hearing Steffke was asked:

"Would you be interested in this transaction in the event the commission authorized an assignment, but in some way or another, and I don't know how it would be done, would require them to be operated as separate companies and either through a rate barrier as to joint-line movement or prohibition as to joint-line movement of the two companies?"

And he answered: "The answer would be 'No.'"

But it is also true that on cross-examination Mr. Steffke made the following answers:

"*Q*. I believe that yesterday you answered the question that you wouldn't be interested in the Yellow certificate if you couldn't unify the operation, is that correct? *A*. Yes, sir.

"*Q*. And by that did you mean that you wouldn't go through with the purchase of the equipment and the certificate if the commission saw fit to require you to operate these lines independent of each other? *A*. I don't know. I don't know. That would probably be a bridge we would have to cross when we come to it.

"*Q*. Is there any such escape clause in your contract? *A*. There hasn't been any reference to any escape clause.

"*Q.* So that you could withdraw from the contract if you were not permitted to unify the operation? *A.* I don't know if we could.

"*Q.* You know of no such, if I may call it, 'escape clause' in the contract? *A.* I don't know whether we could or not.

"*Q.* You don't know of any clause in it? *A.* I can't point to anything specific that says we can't or can."

While the commission's findings are not to be disturbed if inferences from established facts are properly drawn, we must have in mind that, under the rule recognized in *Motor Transport Co. v. Public Service Comm.*, ante, p. 31, 56 N. W. (2d) 548, an isolated piece of testimony does not constitute "substantial evidence in view of the entire record" under the provisions of sec. 227.20 (1) (d), Stats., if such isolated statement is explained or entirely discredited by other testimony or evidence in the record. In that decision we stated (p. 45):

"Since the adoption of our Uniform Administrative Procedure Act in 1943 . . . it is no longer proper for a court in reviewing the findings of an administrative agency to affirm such findings by merely considering isolated testimony, which if standing alone, would be sufficient to sustain the findings, without considering other testimony in the record which impeaches the same."

The contract between Yellow, Steffke, and Fiore contained no escape clause which would have permitted rescission by Steffke if the commission failed to grant unification. No mention is made of unification whatever in such agreement. The material clauses in the contract on this point read as follows:

"The parties agree that Yellow and Steffke shall forthwith make application to the Public Service Commission of Wisconsin and the Interstate Commerce Commission for approval of this agreement and of the assignments and transfers involved herein, and at the same time and simultaneously therewith to seek temporary authority and temporary approval from said commissions (except that there shall be

excluded from the application for temporary authority, all operating rights which are duplications of the present operating rights of Steffke). . . .

"It is agreed that this agreement is expressly subject to the approval of the Wisconsin Public Service Commission and the Interstate Commerce Commission and such other regulatory bodies as may have jurisdiction, and shall be effective only upon such approval, all of the parties to this agreement agreeing to co-operate in the prosecution of such applications to the end that approval be obtained."

The Public Service Commission has approved the assignment of Yellow's authority to Steffke, and such approval is not being questioned on this appeal. Therefore, the condition of the contract with respect to obtaining the approval of the Public Service Commission has been fully complied with. Steffke, by reason of such approval, now stands in the shoes of Yellow, and the provisions of sec. 194.26, Stats., prohibit Steffke from discontinuing common-motor-carrier service in Yellow's former territory without first obtaining the commission's approval to such discontinuance.

We, therefore, hold that in view of the entire record there is no substantial evidence to support the commission's finding that "If unification is denied, Steffke does not wish the assignment approved." Without this finding there is no basis for the contention that the territory embraced in Yellow's certificate will be without adequate common-motor-carrier service if unification is not granted.

The evidentiary finding—that a saving in operating costs estimated to be in excess of $200,000 per year will be effected by Steffke if unification of operations is permitted—is the only ground left to support the commission's ultimate finding that unification is required by public convenience and necessity. If mere saving in operating costs is sufficient to support a finding of convenience and necessity under sec. 194.23 (1), Stats., then any common motor carrier who sought to extend his lines of operations into new territory

already being served by carriers possessing certificates of authority entitling them to there operate could make out a case for securing an amendment to his existing certificate so as to invade such further territory by merely showing that his over-all operating costs would thereby be substantially reduced. We hold that it was not the intention of the legislature to give such effect to the statute as to permit a finding of public convenience and necessity for granting an amendment to a certificate to permit unification to be based solely on a showing of saving in operating costs. In cases like the instant one the result would be to give a carrier an unfair advantage over competing carriers.

It must be conceded that the Interstate Commerce Commission and the federal courts have held that proof of savings in operating costs is proof of public convenience and necessity. However, in most of these cases supplemental or substituted service was offered to replace the carrier's own existing service. These were not "new authority" cases and did not present such matter as is now before us.

It is our conclusion, therefore, that the commission exceeded its statutory authority in granting unification of operations to Steffke under the rule of public convenience and necessity.

We deem the term "unification" to refer to converting that which formerly was joint-line service between Steffke's and Yellow's respective territories into single-line service. Economies which can be effected by Steffke through the elimination of duplicate terminal facilities, business offices, etc., as a result of the assignment of Yellow's authority to it are permissible as long as that which formerly had to be joint-line service under the two certificates is not converted into single-line service.

Appellants complain that the commission also exceeded its statutory authority in granting Steffke's application on a

temporary emergency basis without a hearing. Thereafter a hearing was scheduled on the application, and on November 27, 1951, the commission entered its joint order granting permanent approval. We consider any question now raised as to the validity of the temporary emergency order to be moot. We do not find it necessary to pass upon this matter in arriving at our decision in this case.

*By the Court.*—That portion of the judgment appealed from is reversed and cause remanded with directions to return the record to the Public Service Commission for further proceedings in accordance with this opinion.

The following memorandum was filed May 5, 1953:

FAIRCHILD, J. (*on motion for rehearing*). In the brief of the Public Service Commission filed in support of its motion for rehearing, two issues are raised: (1) That Steffke cannot "joint-line" with itself; and (2) that our original opinion is not clear as to what rights Steffke obtained as a result of the commission's approval of the assignment of Yellow's certificate of authority to Steffke.

The first issue has now been determined by our decision in *West Shore Express, Inc., v. Public Service Comm.* 264 Wis. 65, 58 N. W. (2d) 407.

As to the second issue we stated in our original opinion as follows (p. 130):

"We deem the term 'unification' to refer to converting that which formerly was joint-line service between Steffke's and Yellow's respective territories into single-line service. Economies which can be effected by Steffke through the elimination of duplicate terminal facilities, business offices, etc., as a result of the assignment of Yellow's authority to it are permissible as long as that which formerly had to be joint-line service under the two certificates is not converted into single-line service."

130b

It lies within the province of the commission to determine what rights Steffke is entitled to receive as an incident to the approval of the assignment in keeping with the general principle set forth in the above-quoted portion of our original opinion.

*By the Court.*—Motion for rehearing denied.