COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2017AP1601**

Cir. Ct. No.  2016CV7343

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

---

GREGORY C. MALLETT,

      PLAINTIFF-APPELLANT,

  V.

LABOR AND INDUSTRY REVIEW COMMISSION,

      DEFENDANT-RESPONDENT,

WORK INJURY SUPPLEMENTAL BENEFITS FUND AND BRIGGS & STRATTON CORPORATION,

      DEFENDANTS.

---

      APPEAL from an order of the circuit court for Milwaukee County: GLENN H. YAMAHIRO, Judge.  *Affirmed*.

      Before Brash, P.J., Kessler and Dugan, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Gregory C. Mallett, *pro se*, appeals from an order of the circuit court that reviewed a decision of the Labor and Industry Review Commission (LIRC).   LIRC had concluded that Mallett's latest worker's compensation claim was procedurally barred or, alternatively, lacking supporting evidence.   The circuit court affirmed LIRC's decision in part, reversed it in part, and remanded the matter to LIRC for further fact-finding.   The circuit court determined that a part of Mallett's claim was not procedurally barred, and that there was at least some evidence of record supporting the non-barred portion. Mallett contends that issue preclusion should not apply; LIRC failed to consider the entire record, which prejudiced him and warrants reversal; and his entire medical history dating back to 1981 should be considered because he claims an occupational disease.   We conclude the circuit court's treatment of LIRC's decision was appropriate; therefore, we affirm.

## BACKGROUND

¶2    On April 8, 1981, while working for the Briggs & Stratton Corporation, Mallett suffered a work-related back injury.  On February 1, 1984, an administrative law judge (ALJ) for the Department of Workforce Development awarded Mallett twenty weeks of temporary disability, five percent permanent partial disability, and medical expenses.  LIRC affirmed the award on April 6, 1984.  Mallett filed for judicial review, believing LIRC should have entered an interlocutory order rather than a final one, but the circuit court and this court both affirmed the finality of LIRC's order.  *See Mallett v. LIRC*, No. 1985AP929, unpublished slip op. at 1-2 (WI App Jan. 10, 1986).

¶3    Mallett returned to work as a cam gear inspector in May 1983, which, save for a three-month strike between September and December 1983,

2

Mallett performed until December 17, 1983, when he claimed a right arm injury. Briggs & Stratton paid temporary disability for various periods of time until June 1986; it also paid Mallett one percent permanent partial disability. Mallett returned to work as a piston inspector from January 1984 through April 24, 1984.

¶4    In 1987, Mallett filed a hearing application, claiming thoracic myositis and tendonitis of the right upper extremities. Identifying both the April 1981 and December 1983 dates of injury on his application and claiming his work as a cam gear inspector in 1983 aggravated the 1981 injury, he also argued that the Department could reopen a final order in the case of an occupational disease to order payment of additional medical expenses. The ALJ denied the claim for additional medical expenses because the final decision on the April 1981 injury was that it was an accidental injury; however, the ALJ concluded that the claim related to the December 1983 injury was viable.

¶5    Mallett thus filed a new claim, stating that his work exposures as a cam gear inspector up through December 17, 1983, were a material contributory causative factor in the onset or progression of a neck and right arm condition or disability due to cervical myelopathy. To support his claim, Mallett relied on medical records and reports from his treating physicians, Dr. Dennis Maiman and Dr. Mohan Dhariwal. Briggs & Stratton submitted a report from an independent medical examiner, Dr. Richard Karr.

¶6    In an opinion dated July 26, 2007, the ALJ dismissed Mallett's application. The ALJ found Karr's opinions more credible than those of Mallett's treating physicians, including Karr's opinion that Mallett was not suffering from myelopathy. The ALJ thus concluded that Mallett suffered a compensable right arm and wrist injury on December 17, 1983, but did not sustain any cervical

myelopathy, cervical injury, or spinal injury arising out of the arm/wrist injury. The ALJ further found that Mallett had been compensated fully for the 1983 injury and no further medical treatment was reasonable, necessary, or related to that injury. LIRC affirmed the ALJ's conclusion. The circuit court and this court affirmed LIRC. *See Mallett v. LIRC* (*Mallett II*), No. 2009AP1130, unpublished slip op. ¶¶1, 8 (WI App Mar. 2, 2010).

¶7      On January 27, 2014, Mallett filed a Work Injury Supplemental Benefits Fund barred claim.[1]  In this application, Mallett claimed his January 1984 to April 24, 1984 work as a piston inspector was at least a material contributory cause of his cervical myelopathy. He identified May 8, 1981, as the date of his injury and cited medical records dating back to 1981, including those records he used when he applied for benefits from the December 1983 injury. Mallett's doctors for this newest claim—Maiman, Dhariwal, and Dr. Michael Lischak—all initially attributed Mallett's cervical myelopathy to his April 8, 1981 incident or work exposures dating back to April 1981. Each doctor then amended his report to state Mallett's January 1984 to April 1984 work history was a material contributory factor to his injury. The Fund submitted a medical opinion from Dr. Karr, who offered his earlier report on which Briggs & Stratton had relied and a new report affirming his opinion that Mallett's work exposure did not cause the current injuries, including cervical myelopathy.

---

[1]  *See* WIS. STAT. § 102.66 (2017-18); *see also* **State v. DILHR**, 101 Wis. 2d 396, 407, 304 N.W.2d 758 (1981) (authorizing award of benefits for otherwise meritorious claims barred by the statute of limitations in effect at the time the claims arose).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶8    An ALJ heard the new application on September 24, 2014.  The Fund moved to dismiss on the ground of issue preclusion.  The ALJ agreed with the Fund that the 2007 administrative decision—which, based on Karr's opinion, held Mallett had not sustained cervical myelopathy—was preclusive and dismissed the claim.  Mallett appealed.  LIRC affirmed, agreeing with the application of issue preclusion but alternatively concluding that Mallett's latest application lacked sufficient supporting evidence to prove his light duty work from January 1984 to April 1984 was a cause of his injuries.

¶9    Mallett petitioned the circuit court for judicial review, arguing that the circuit court should reverse and remand to LIRC for a determination on the merits of his claims.  The circuit court agreed with LIRC that issue preclusion bars the portion of Mallett's claim relating to the April 1981 and December 1983 dates of injury.  However, the circuit court noted that Mallett's "work exposures from January 10[, 1984,] to April 1984 have not actually been adjudicated" and that precluding litigation regarding whether those exposures may have caused his injury would be unfair.  The circuit court also noted that LIRC's memorandum opinion "contains no explanation of how LIRC reached the conclusion that Mallett's April 23, 1984 injury was not a causative factor of his injury in light of Drs. Lischak, Dhariwal and Maiman's testimony to the contrary."  The circuit court therefore reversed[2] and remanded this case to LIRC "for further findings of fact regarding whether Mallett's work exposures from January 1984 to April 1984 were a material causative factor of his spinal injuries."  Mallett appeals.

---

[2] A reviewing court is only empowered to "confirm or set aside" LIRC's decision.  *See* WIS. STAT. § 102.23(1)(e).  While the circuit court's terminology was imprecise, the meaning and effect of its decision are clear.  Thus, we assign no significance to its use of the word "reverse" rather than "set aside."

## DISCUSSION

### I. Standard of Review

¶10 "On appeal, we review LIRC's decision and not the circuit court's." *Pick 'n Save Roundy's v. LIRC*, 2010 WI App 130, ¶8, 329 Wis. 2d 674, 791 N.W.2d 216. While LIRC's factual findings are conclusive, *see* WIS. STAT. § 102.23(1)(a)1. & (6), we are not bound by its determinations on questions of law. *See* **Wehr Steel Co. v. DILHR**, 106 Wis. 2d 111, 117, 315 N.W.2d 357 (1982). The burden of proof is generally on the party seeking to overturn the agency's action. *See* **Harnischfeger Corp. v. LIRC**, 196 Wis. 2d 650, 661, 539 N.W.2d 98 (1995), *abrogated on other grounds by* **Tetra Tech EC, Inc. v. DOR**, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21.

### II. Issue Preclusion

¶11 The main issue in this appeal is whether issue preclusion bars Mallett from relitigating his April 1981 and December 1983 injuries as causative factors in his current cervical myelopathy claim. Issue preclusion "is designed to limit the relitigation of issues that have been actually litigated in a previous action." **Aldrich v. LIRC**, 2012 WI 53, ¶88, 341 Wis. 2d 36, 814 N.W.2d 433.

¶12 The first step in an issue preclusion analysis requires us to "determine whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." *See id.*, ¶97 (citation omitted).

¶13 It cannot be seriously disputed that the effects of Mallett's April 1981 and December 1983 injuries were actually litigated and determined in a prior proceeding. In the claim heard in 2007, the issue, as expressly confirmed by the

6

hearing examiner at the start of the hearing, was specifically whether Mallett's claim for cervical myelopathy arose from the December 1983 injury. *See **Mallett II***, No. 2009AP1130, ¶7. LIRC adopted the ALJ's conclusions and determined that neither the April 1981 injury nor the December 1983 injury caused the myelopathy. *See id.*, ¶8. We ultimately affirmed, upholding LIRC's conclusion that neither injury caused Mallett's cervical myelopathy. *See id.*, ¶¶1, 20. Thus, the issue was litigated and determined by valid decisions in a previous action, and the determination of the issue, which was dispositive of Mallett's claims for compensation, was essential to the decision.

¶14 The second step in an issue preclusion analysis requires a determination of "whether applying issue preclusion comports with principles of fundamental fairness." *See **Aldrich***, 341 Wis. 2d 36, ¶98 (citation omitted). We consider five factors for this step:

> (1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;
>
> (2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;
>
> (3) Do significant differences in the quality or extensiveness of proceedings between two courts warrant relitigation of the issue;
>
> (4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and
>
> (5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.*, ¶110 (citation omitted). No single factor is dispositive, and the weight given to each factor is a matter of discretion. *See id.*, ¶¶111-12.

¶15 It is clear that LIRC's application of issue prelusion to the April 1981 and December 1983 injuries in this matter comports with fundamental fairness. Mallett sought review of LIRC's prior decision; not only did he seek judicial review in the circuit court and then appeal to this court, he also petitioned, albeit unsuccessfully, both the Wisconsin and United States Supreme Court for review. Mallett does not identify any contextual shifts in the law, contend that the burdens of proof or persuasion have shifted, or identify public policy or personal circumstances that would make applying issue prelusion fundamentally unfair.

¶16 Mallett does contend that there were significant differences in the quality of the proceedings. He points to the fact that the circuit court found his January 1984 to April 1984 exposure "had not been litigated, nor have the date of injury been considered by Dr. Karr nor the LIRC in the [prior] December 17, 1983 date of injury hearing." The fact that the 1984 injuries have not yet been litigated does not make it fundamentally unfair to prevent relitigation related to the April 1981 and December 1983 injuries. The fact that the 1984 injuries have not yet been litigated is precisely why the circuit court did not invoke issue preclusion as to those dates and why it remanded the matter to LIRC for further proceedings.

¶17 Mallett also assails the quality of earlier proceedings by arguing that the prior determinations in this matter, including those discussed in *Mallett II*, should not be considered because they rely on Karr's reports, the findings of which Mallett believes to be "severely tainted."[3] However, LIRC "is the sole

---

[3] In his arguments challenging Karr's reports, Mallett attempts to incorporate by reference his circuit court brief and a motion to strike. This is an inappropriate means of presenting an argument. *See Calaway v. Brown Cty.*, 202 Wis. 2d 736, 750-51, 553 N.W.2d 809 (Ct. App. 1996); *see also DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archeologist with the record.").

judge of the weight and credibility of witnesses." *See Wisconsin Ins. Sec. Fund v. LIRC*, 2005 WI App 242, ¶18, 288 Wis. 2d 206, 707 N.W.2d 293. "Where there are inconsistencies or conflict in medical testimony, [LIRC], not the court, reconciles the inconsistences and conflicts." *Id.* (citation omitted). Mallett's issues with Karr's reports are merely credibility challenges that we may not resolve. *See id.*, ¶¶18-19.

¶18 The circuit court agreed with LIRC's fundamental fairness assessment and its application of issue preclusion relative to the role of the April 1981 and December 1983 injuries, and we agree as well. Mallett previously litigated those injuries, including on appeal, where we expressly affirmed that those injuries did not cause Mallett's cervical myelopathy. The significance of those injuries cannot be relitigated in the current proceedings. We also agree with the circuit court's conclusion that issue preclusion should not bar further litigation regarding Mallett's January 1984 to April 1984 work exposure.[4]

*III. Other Issues*

¶19 Mallett raises two additional issues on appeal, which we briefly address. The first issue is whether LIRC prejudiced him and denied him due process when it "considered merely the part of the record which tended to support the agency's findings[.]" Relying on *Silverberg v. Industrial Commission*, 24 Wis. 2d 144, 154, 128 N.W.2d 674 (1964), Mallett argues that a reviewing court may "reverse or modify an agency decision if substantial rights of the aggrieved party have been prejudiced as a result of the administrative findings being

---

[4] LIRC, by not cross-appealing this portion of the circuit court's decision, concedes its own error in that regard. *See* WIS. STAT. RULE 809.10(2)(b).

'unsupported … in view of the entire record[.]'" *See id.* (italics and citation omitted).

¶20    *Silverberg* is inapposite.  First, the parties in that case agreed that the court should review the case on the record before it, without remand to the agency.  *See id.* at 151.   Second, *Silverberg* did not involve a worker's compensation matter.   *See id.*   Third, judicial review in that case was conducted under WIS. STAT. § 227.20(1)(a) (1963-64) and, while that statute did contain the above-quoted language about prejudice, that particular statutory section no longer exists, and its present counterpart, WIS. STAT. § 227.57, does not mention "prejudice." Finally, ch. 227 does not prescribe the applicable scope of judicial review in a worker's compensation action;  then, as now, judicial review of worker's compensation matters is governed by WIS. STAT. § 102.23, not ch. 227.  *See* WIS. STAT. § 227.52(7) (excluding "[t]hose decisions of the department of workforce development which are subject to review, prior to any judicial review, by the labor and industry review commission" from chapter 227 review); § 102.23(1)(a).

¶21    Further, Mallett's complaint that LIRC did not consider the entire record stems from the circuit court's finding that LIRC "seemingly ignored medical evidence contrary to its conclusion" when it did not acknowledge or make any factual findings regarding the opinions of Mallett's three physicians and held that Mallett had submitted no supporting evidence for his claim.  However, any "prejudice" LIRC may have caused by not reviewing Mallett's evidence will be

remedied by the remand order.[5]  Thus, this is not an issue we need address further on appeal.

¶22     Mallett also takes issue with the circuit court's rejection of his "occupational disease" theory.  The circuit court stated that the theory does not allow Mallett to "relitigate the progress of his disease from April 8, 1981 onward" and that his "only path forward … is to argue that his work exposures from January 1984 to April 1984 were at least a material contributory causative factor of his injuries."

¶23     "Worker's compensation cases involve two types of compensable injuries:  those caused by accidents, and those caused by occupational diseases." *Wisconsin Ins. Sec. Fund*, 288 Wis. 2d 206, ¶10.  "An accidental injury is one that 'results from a definite mishap; a fortuitous event, unexpected and unforeseen by the injured person.'" *Id.* (citation omitted).  "An occupational disease injury is an injury that is 'acquired as the result and an incident of working in an industry over an extended period of time.'" *Id.* (citation omitted).

¶24     Mallett asserts that the April 1981 and December 1983 injuries should not be severed from consideration as part of his occupational disease claim. However, this merely brings us back to issue preclusion.  The 1981 injury was expressly held to have arisen from an accident.  *See Mallett II*, No. 2009AP1130, ¶19.  That decision was conclusive and final.  *See Kwaterski v. LIRC*, 158 Wis. 2d 112, 118, 462 N.W.2d 534 (Ct. App. 1990) (holding that after LIRC enters a final

---

[5] Mallett requests that we reverse LIRC's decision entirely and remand the matter to LIRC with directions to award him benefits.  However, that exceeds the scope of judicial review. *See* WIS. STAT. § 102.23(1)(e), (6).

11

order and the review period has expired, a decision is "final for all purposes"). Subsequently, both the April 1981 and December 1983 injuries were ruled non-contributing factors to a cervical myelopathy claim. *See Mallett II*, No. 20109AP1130, ¶8. These conclusions cannot be relitigated, no matter what new theory Mallett might think to invoke.

## CONCLUSION

¶25    Applying issue prelusion to the April 1981 and December 1983 injuries comports with fundamental fairness. No one disputes that the circuit court appropriately concluded that issue preclusion is inapplicable to the January 1984 to April 1984 work exposure or that remand on that point is proper. Any "prejudice" from LIRC's failure to consider evidence regarding that exposure will be remedied by the circuit court's partial remand to LIRC for additional fact-finding.[6] Finally, the circuit court appropriately rejected Mallett's occupation disease theory as an attempt to circumvent issue preclusion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] In his reply brief, Mallett argued for the first time on appeal that a conflict of interest exists because the Department of Justice represents both LIRC and the Fund. We do not consider arguments raised for the first time in the reply brief. *See Northwest Wholesale Lumber v. Anderson*, 191 Wis. 2d 278, 294 n.11, 528 N.W.2d 502 (Ct. App. 1995).